UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALLEN THOMAS CARTER,**

      **Plaintiffs,**

                                                            **Case No. 1:03-CV-904**

**v.**

                                                            **Hon. Gordon J. Quist**

**EILEEN MCKENNA,**
**NABIL EL-SHAMAA, M.D.,**
**UNKNOWN BARTH, M.D., and**
**DAVIS HOWELL, P.A.,**

      **Defendants.**

      _____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on the joint motion for summary judgment filed by Dr. Nabil El-Shamaa, Dr. Timothy Barth and Davis Howell, P.A., pursuant to Fed. Rules Civ. Proc. 56 (docket no. 84).[1]

           **I.**      **BACKGROUND**

Plaintiff sets forth the following allegations in his First Amended Complaint. He was incarcerated at the Carson City Correctional Facility on or about January 4, 2001. First Amend. Comp. at ¶ 8. Plaintiff suffered from uncontrolled high blood pressure from January 12, 2001 through February 11, 2001. *Id.* at ¶¶ 10-30. On February 11, 2001, he was sent to the Carson City Hospital emergency room for evaluation. *Id.* at ¶¶ 29-31. Plaintiff's medical records indicate that he suffered from a distal fibular fracture and a stroke. *Id.* at ¶ 31. Based on these allegations,

---

[1] Defendant Eileen McKenna was dismissed prior to the filing of the motion for summary judgment.

plaintiff contends that the defendants were deliberately indifferent to his serious medical needs and violated his Eighth Amendments rights to be free from cruel and unusual punishment. After defendants filed their joint motion for summary judgment, plaintiff agreed to dismiss Dr. El-Shamaa and Dr. Barth. The sole remaining defendant is Davis Howell, P.A. ("Howell").

## II. Discussion

### A. Standard of review for summary judgment

Howell has moved for summary judgment pursuant to Fed. Rules Civ. Proc. 56(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Plaintiff's Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under 42 U.S.C. § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the medical need to be "serious". *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

To establish the subjective component, deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. Thus,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

After reviewing the pleadings, affidavits, deposition testimony and plaintiff's medical records, the court concludes that plaintiff has failed to establish the subjective component of an Eighth Amendment violation. In is undisputed that plaintiff was incarcerated at the Carson City facility from January 4, 2001 through February 11, 2001. Plaintiff received constant medical care during this 38-day period. Plaintiff alleges in his First Amended Complaint that his blood pressure was monitored on January 12th, January 21st, January 30th, January 31st (twice), February 2nd, February 6th (four times), February 7th (twice), February 8th, February 9th (nine times), February 10th (twice) and February 11th (three times). First Amend. Comp. at ¶¶ 10 - 29. In addition, plaintiff's progress notes indicate that he was seen by medical staff, underwent testing or had his records reviewed on the following dates: January 4th, 5th, 12th, 18th, 19th, 22nd, 24th, 25th, 26th, 30th, 31st (three entries); February 1st, 2nd, 5th (three entries), 6th (three entries), 7th (two entries), 8th, 9th (four entries), 10th and 11th (three entries). MDOC Progress Notes pp. 454-67, attached to defendants' brief as Exh. B. Plaintiff's medical records indicate 32 separate entries during the 38 day time period at issue. This constant monitoring of plaintiff's condition can hardly be described as evidence of "deliberate indifference" to his medical condition.

4

The gist of plaintiff's claim is that Howell was deliberately indifferent for failing to diagnose and treat plaintiff, which resulted in plaintiff suffering a stroke and a distal tibular fracture. In support of this theory, plaintiff has tendered an opinion from David A. Lombardi, M.D., in which the doctor reviewed plaintiff's medical records from January 21, 2000 through May 23, 2002. Lombardi Letter (March 4, 2005) attached to plaintiff's response as Exh. O.[2]

Dr. Lombardi is critical of Howell's evaluation and treatment of plaintiff on February 9, 2001:

> [Plaintiff's] records document a long history of hypertension. The records also document that on 02/09/2001 at 0800 hours the patient complained of numbness in the right arm distal to the elbow and in the right foot. . . . At this point in time the patient's complaints were only sensory but clearly of a central nervous system etiology and yet the evaluating P.A.C. [Howell], despite performing a detailed examination, lists the complaint incorrectly as paresthesias of the right upper extremity when clearly the beginning of his note indicates it is his right arm distal to the elbow and in the right foot. He does not make any assessment as to what the plan is with regards to this complaint and, more importantly, does not recognize this as an impending stroke. He should have recognized this as a central nervous system etiology for paresthesia in a patient with a diagnosis compatible with small vessel disease and should have recognized this as an impending stroke and should have placed the patient on one aspirin a day by mouth. If he had placed the patient on aspirin one tablet a day, it is medically more likely than not that this patient's stroke could have been avoided. Therefore, in my opinion, this represents a deliberate indifference to a serious medical need and as a result this patient suffered a stroke with permanent residual of right upper extremity weakness and spasticity and a central pain syndrome.

Lombardi Letter at 12-13.

Dr. Lombardi's letter does not create a genuine issue of material fact to support plaintiff's constitutional claim. At most, Dr. Lombardi found that defendant Howell was negligent

---

[2] Defendants contend that this opinion is inadmissible because the report was untimely. Defendants' Reply at 8. However, the court notes that defendants have not moved to strike the opinion. For purposes of this dispositive motion, the court will assume that Dr. Lombardi's opinion is properly before the court.

in evaluating and treating plaintiff's condition on February 9th. Dr. Lombardi's conclusion that "[i]f [defendant Howell] had placed the [plaintiff] on aspirin one tablet a day, it is medically more likely than not that [plaintiff's] stroke could have been avoided" falls far short of the subjective "deliberate indifference" necessary to support an Eighth Amendment claim. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The courts distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is made that a prisoner received inadequate medical treatment. *See Westlake v Lucas,* 537 F.2d 857, 860 n.5 (6th Cir. 1976), where the court stated:

> "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which sound in state tort law."

Furthermore, Dr. Lombardi's opinion that defendant Howell's treatment "represents a deliberate indifference to a serious medical need" is an inadmissible legal conclusion. "[E]xperts' opinions on the ultimate issue of deliberate indifference are expressions of a legal conclusion and are outside the scope of admissible expert testimony." *Soles v. Ingham County*, 316 F.Supp.2d 536, 542 (W.D. Mich. 2004). *See Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir.1994) (it is the responsibility of the court, not testifying witnesses, to define legal terms such as "deliberate indifference").

Plaintiff relies on the opinion in *Tate v. Coffee County, Tennessee*, 48 Fed. Appx. 176 (6th Cir. 2002) for the proposition that a "jail [n]urse's failure to examine a prisoner, coupled with her admission that she suspected a stroke, supports the conclusion that she was subjectively aware of a serious risk and disregarded that risk." Plaintiff's Response at 10. However, *Tate* is

factually distinguishable from the present case. In *Tate*, the medical provider (a nurse) suspected that the prisoner had a stroke but failed to examine him. *Tate*, 48 Fed. Appx. at 179-80. Here, Howell examined plaintiff <u>twice</u> on February 9th (i.e., at 8:00 a.m. and at 11:50 a.m.), but has not said he suspected a stroke. Progress Notes at 458-59.

Howell testified that plaintiff was complaining of numbness in his right arm and in his right foot, that he performed a neurological examination to try to objectively determine whether plaintiff had paresthesia, but found no paresthesia. Howell Dep. at 61, attached to defendants' brief as Exh. D. Howell testified that he wanted to rule out paresthesia, because it is a sign or symptom of a stroke (CVA). *Id.* at 63. Howell noted that plaintiff's right eye and mouth had some asymmetry with the left, but that plaintiff was able to open his mouth, smile, raise his eyebrows, close his eyelids tightly and puff his cheeks. *Id.* at 61. The balance of the neurological examination was essentially normal: plaintiff was talking; walked with a normal gait; was alert and oriented; had intact external occular motions; and was sensitive to a pin prick test. *Id.* at 61-62. Howell checked plaintiff's deep tendon reflexes, bicep reflexes, patellar reflexes, range of motion of his neck, carotid arteries (for narrowing), range of motion on his extremities, and hand grip strength. *Id.* at 62. Plaintiff was able to stand, sit down, roll over on the exam table, and sit up on the table without any assistance. *Id.*

Howell also took plaintiff's blood pressure, pulse and respirations, and found that these vital signs were better than on some of plaintiff's previous visits. *Id.* at 63-64. Based on this examination and testing, Howell was not able to objectively determine that plaintiff had numbness or paresthesia. *Id.*

Howell also performed a second neurological examination the same day, which was prompted by a call from an officer in plaintiff's housing unit. Progress Notes at 458-59; Howell Dep. at 75-83. Howell noted no changes at the second examination, but decided to discontinue one of plaintiff's blood pressure medications and to increase the dose of another medication (Catapres). Howell Dep. at 77. Howell testified that he did not find any objective signs of numbness. *Id.* at 80. Despite plaintiff's complaint of numbness, Howell testified that he did not rule out the possibility of a CVA at that time. *Id.* at 81. Numbness in the arm could have been caused by a pinched nerve in the neck, peripheral vascular disease, a TIA (transient ischemic attack) or a CVA. *Id.* at 80. Howell testified that if plaintiff had other corroborating signs or symptoms, he would have taken a different course of action. *Id.*

In summary, the medical records and deposition testimony establish that Howell examined plaintiff twice on February 9th to rule out the possibility of a stroke. Moreover, plaintiff was seen extensively prior to that date. Viewing the facts in the light most favorable to plaintiff, I conclude that Howell did not violate plaintiff's constitutional rights. Even if Howell reached the wrong conclusion regarding plaintiff's condition, his examination and treatment do not constitute "deliberate indifference" to plaintiff's serious medical needs, as that term is understood in law. *See Estelle*, 429 U.S. at 106.

### III.   RECOMMENDATION

Accordingly, I respectfully recommend that defendants' motion for summary judgment (docket no. 84) be **GRANTED**.

Dated: November 7, 2005         /s/ Hugh W. Brenneman, Jr.
                                 Hugh W. Brenneman, Jr.
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).